In the Matter of the Estate of MARY SWEETLAND, Deceased.

*(Surrogate's Court, Madison County, Filed January 14, 1892.)*

COLLATERAL INHERITANCE TAX—PARENTAL RELATION.

> The deceased was a co-tenant of certain property with her sister, the mother of petitioners, and resided thereon with her sister's family until her sister's death, without any agreement as to board or payment of rent. After the sister's death she continued to reside there in the same manner. After their father's death the petitioners continued to work the farm in the same manner as formerly and deceased continued to reside with them until her death. *Held*, that this was not sufficient to constitute the relation of parent and child between them so as to justify an exemption from tax upon the property received by them from her.

Proceeding for collateral inheritance tax.

M. H. Kiley, for petitioners; J. A. Johnson, for the people.

KENNEDY, S.—This is a proceeding to show cause why a decree should not be made adjudging that the real and personal estate passing to the petitioners, Floyd Greenman and Henry Greenman, nephews of deceased, be not subject to taxation under chapter 483 of the Laws of 1885, and the several acts amendatory thereto.

The two nephews make this application for exemption from the payment of the tax on the ground that for a period of not less than ten years prior to the death of their aunt, Mary Sweetland, they stood in the mutually acknowledged relation of parent and children.

The facts upon which the application is based are as follows: Mary Sweetland was never married, and from the earliest recollection of the petitioners had made her home a part of the time with her parents, and some of the time with others. Upon the death of Miss Sweetland's mother, her heirs agreed upon a settlement of her estate, by which the mother's farm in Cazenovia became the property of Miss Sweetland and her sister, Mrs.

Greenman, the mother of the petitioners. Some time previous to the death of Mrs. Sweetland, Mr. and Mrs. Greenman moved onto and carried on her farm for her, and after her death continued to occupy said farm till their death, since which time the two petitioners have occupied and managed said farm till the death of their aunt, receiving and using the entire avails of it without objection from Miss Sweetland, and paying her no compensation for the use of her half of the farm, and having no agreement with her in relation to it. Upon the death of their mother, the two boys became the owners of an undivided half of the farm in question, and by the will of their aunt were made legatees of the other half of it, and all of her personal estate, amounting in all to about $4,000. Mrs. Sweetland died in 1879; Mrs. Greenman July 28, 1879; Mr. Greenman March, 1881, and Miss Sweetland November 3, 1889, aged sixty years. Henry is now thirty-eight years old, and Floyd thirty-one, and they claim that the relation of parent and child existed between themselves and their aunt from the death of their mother, July 28, 1879, to the death of their aunt, November 3, 1889, a period of about ten years and three months, notwithstanding the fact that their father did not die till March, 1881, leaving only a period of eight years and eight months for the relation to exist after the death of their father, provided such a relation did or could arise and have a legal existence by reason of any facts proven in this proceeding. The petitioners, during the life of their parents, have always lived at home with them and assisted their father in farming, and never were engaged in business elsewhere upon their own account. After the father's death the aunt and both nephews lived together in the same house for a few years, but subsequently Floyd married and built a house upon the farm, and thereafter lived separate from the aunt, leaving Henry and the aunt in occupancy of the old home till her death.

The application must be denied, because we think the law to be that if a child continues to live at home with his parents after he has reached his majority the relation of parent and child,

theretofore existing, will be presumed to remain unsevered, until by decisive and affirmative acts on the part of the child or parent his freedom and emancipation from such relation is claimed and asserted by him.    Assuming this to be the law, the fact that some relative or other person lives in the same family as house-keeper or discharges many of the household· duties ordinarily performed by a mother, or is treated and regarded as one of the family by a surviving husband and children who have reached their majority, is not of itself sufficient to create that parental relation which the law recognizes as necessary to ·justify an exemption from the tax in question.

A less stringent and different rule should apply in case of minor children because of their lack of legal right to fix their relation with others, their real or supposed lack of that judgment and discretion which is necessary to determine what is best for them, their dependence upon others for their care, education and maintenance, and the duty of the public, the courts, and of private individuals to provide for those whose helpless situation makes parental care necessary for them.   So, too, there may be other special and peculiar circumstances arising from social, family or business relations, or from other causes and conditions in life, which would satisfy the court that it had the legal right to infer the existence of parental relations. Again, if a father or mother dies, leaving children either over or under their majority, who have always lived at home, and the surviving parent remarries, such children and stepfather or stepmother, as the case may be, if they continue to recognize the relation of parent and.children to exist between them as ordinarily exhibited in families, the relation of parent and child would be presumed to exist until the contrary was proven, and such child or children, in cases of a legacy from the stepfather or stepmother, would be exempted from the payment of the inheritance tax.   Within the rules of law above stated, we think the petitioners would be exempt from the payment of any tax upon the legacy to them if their father had married his wife's sister and they had continued to live at home with their aunt

as their stepmother for the period of ten years in the manner in which they have lived, but we do not think the parental relation which the statute contemplates could commence in this case till the death of Mr. Greenman, a period of time too short to give the petitioners the benefit of the statutory exemption.

Having stated the rules of law applicable to proceedings of this character, we call attention to some facts in this case in support of the conclusion we have reached. It appears that Mr. Greenman occupied and worked the farm in question from the death of Mrs. Sweetland in 1879 till his death in 1881, without any agreement with Miss Sweetland in regard to rent or payment in any form for the use of her half of it, and that during all this time she remained a member of the family, living with Mr. Greenman and his children without any agreement or understanding with reference to paying for her board, and upon his death the petitioners continued to carry on the farm till the death of their aunt in the same manner as their father had done, rendering her no account of its avails and paying her no compensation therefor, she continuing to live in the house in the same manner as she had done during the lifetime of Mr. and Mrs. Greenman. From the time Miss Sweetland and sister became the owners of the farm upon the death of their mother there was no change in the manner of conducting the farm or in the mode of living as far as she was concerned. The aunt and the children each treated and cared for the other the same as they had always done.

Ever since the nephews were born she had made her home principally with their parents, had eaten at their table and been one of the family for more than thirty years, and we assume she took an active interest in all family matters and assisted in all the varied duties of the household. But the relation of parent and children requires something more than living in the same house and family under the circumstances shown in this case. Miss Sweetland and her sister were tenants in common of the farm, and after the death of Mrs. Greenman she was a like tenant with her nephews, and as such we assume she was occupy-

ing the house and was not there by reason of a license or permission from the other owners, but was in possession and living in the house by virtue of her legal right so to do, a right which could not be denied or taken from her. No act or agreement is proven by the nephews that they or their parents were ever in the exclusive possession of the farm, and it will therefore be presumed that the residence of the aunt in the house and all her relations with her nephews were, so far as business affairs are concerned, as a tenant in common with them, and not the relation of parent and child, at any time.

Her life and theirs upon the farm were simply the assertion of the mutual rights which each had in the real property. The fact that she never received any of the avails of the farm would indicate that they were retained in payment for her board and services rendered in her behalf, beacuse Mr. Greenman or her nephews would not probably have retained this income unless they had a right so to do for some purpose or reason mutually satisfactory to all.

The counsel for the petitioners rely upon the opinion of this court in the Matter of the Spencer Estate, 21 St. Rep. 152, in support of the claim from exemption, but the facts of the two cases are so widely different that the conclusions of law therein maintained do not apply to this case.

The application of the petitioners will, therefore, be denied, and an order entered appointing an appraiser of the estate of Mary Sweetland.